# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

(To be supplied by the court)

**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 23 2019

JEFFREY P. COLWELL
CLERK

WYATT T. HANDY JR.,

Plaintiff

v.

CITY & COUNTY OF DENVER,

GRETA ALDRIDGE,

DENVER PRETRIAL SERVICES DEPT,

UNKNOWN EMPLOYEE,

Defendant(s).

---

## COMPLAINT

---

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be
served by filing a notice of change of address.  Failure to keep a current address on file with the
court may result in dismissal of your case.*

WYATT T. HANDY JR.
P.O. BOX 221531
DENVER, CO 80222
(720) 461-0787
w.t.handyjr@gmail..com


## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If
more space is needed, use extra paper to provide the information requested.  The additional
pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1: CITY AND COUNTY OF DENVER 1437 Bannock Street, Denver, 80204


Defendant 2: GRETA ALDRIDGE 303 W. Colfax Ave. 16th Floor, Denver, CO 80204

(720) 913-8900

Defendant 3: DENVER PRETRIAL SERVICES DEPARTMENT 303 W. Colfax Ave. 16th

Floor, Denver CO 80204  (720) 913-8900


Defendant 4: UNKNOWN EMPLOYEE 303 W. Colfax Ave. 16th Floor, Denver CO 80204


## C.    JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

 X    Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution,
laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States
Constitution that are at issue in this case.

First Amendment-Freedom of Association; Free Exercise of Religion; Religious Land

Use and Institutionalized Persons Act (RLUIPA); Fourth Amendment-Unreasonable

Search and Seizure; Eighth Amendment- Excessive Bail; Fourteenth Amendment-Equal

Protection & Due Process of Law;

\_\_\_\_\_ Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of <u>COLORADO</u>

If Defendant 1 is an individual, Defendant 1 is a citizen of

If Defendant 1 is a corporation;

Defendant 1 is incorporated under the laws of <u>COLORADO</u> (name of state or foreign nation).

Defendant 1 has its principal place of business in <u>COLORADO</u> (name of state or foreign nation).

## D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

3

CLAIM ONE:- First Amendment-Freedom of Association

Supporting facts:

1. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

2. Defendants were acting under color of state law in their actions which occurred at all relevant times to this action.

3. This claim one is being leveled against Defendants Greta Aldridge and unknown employee, in their individual and official capacities, as employees of the City and County of Denver and the Denver Pretrial Services Department, for intentionally implementing and enforcing unconstitutional house arrest practices and policies that are unduly restrictive, precluding Plaintiff from associating with family, friends, religious leaders and spiritual advisors, in violation of his freedom of association rights.

4. On 12/13/19, Plaintiff was arrested and booked into the Denver City & County Jail on charges related to domestic violence.

5. On 12/15/19, Plaintiff was interviewed by the unknown Defendant from the Denver Pretrial Services Department.

6. On 12/15/19, Plaintiff was brought to the Denver County Court, to be advised of the charges against him and have his bond set.

7. At the hearing, Plaintiff learned that the unknown Defendant from the Denver Pretrial Services Department, had recommended that his bond be set in the amount of $10,000

"cash only" and be placed on the maximum level of supervision upon his release to pretrial services.

8. The Denver County Court Judge set Plaintiff's bond at $5,000 "cash only" and ordered that upon release he be placed on the maximum level of supervision with pretrial services and issued a protection order restraining him from the victim in the case, as well as his two year old daughter, who's not a victim in the case, nor a witness.

9. The Judge stated during the hearing that she has never seen the type of recommendation that pretrial services made for Plaintiff for a misdemeanor case but that she would go along with it.

10. On 12/16/19, Plaintiff's family posted his $5,000 "cash only" bond and he was released to the Denver Pretrial Services Department, where he was fitted with a GPS electronic monitoring device on his ankle.

11. Plaintiff was told by the Denver Pretrial Services Department that Defendant Greta Aldridge was his pretrial services supervisor; that he couldn't be at his own home, forcing him into homelessness; that GPS electronic monitoring device exclusion zones were put in place excluding him from several locations with respect to the victim in the case; and that he was not allowed to leave his uncle's house for any reason whatsoever, with the exception of medical emergencies, to go to Court, and to appointments with his pretrial services supervisor.

12. Defendant Aldridge denied Plaintiff's several request to visit his adult daughter and grandkids.

13. Defendant Aldridge denied Plaintiff's request to visit his elderly father, who's sick with a serious heart condition.

14. Defendant Aldridge denied Plaintiff's request to go grocery shopping or to restaurants to buy food, although he lives with his uncle, who's a disabled veteran, that struggle to do these tasks for himself. Plaintiff has gone hungry on numerous occasions due to this restriction.

15. Defendant Aldridge denied Plaintiff's request to visit the United States District Court to get the complaint forms he needed to file the lawsuit in this case.

16. Defendant Aldridge denied Plaintiff's request to seek and maintain employment, whereas he could provide for himself and his family, although she knew Plaintiff was the sole provider for his family. Due to the employment restriction, Plaintiff's family was evicted from the condo they rented.

17. Defendant Aldridge denied Plaintiff's ability to visit religious leaders and spiritual advisors, that he's been knowing and visiting throughout the years, who've played a major role in his rehabilitation and growth in his religious beliefs or attend services.

18. Defendant Aldridge threatened Plaintiff with violating his bond for taking out the trash and doing chores that his disabled veteran uncle is not able to do.

19. On 07/10/19, prior to the commencement of Plaintiff's trial, related to the aforementioned domestic violence case, all charges were dismissed with prejudice.

20. Courts rely heavily on pretrial services supervisors and employees' recommendations. In this case, the court ordered that his pretrial release, prior to trial, be spent on house arrest, and that he be allowed to leave the site of confinement only for "emergency purposes with permission from the pretrial services officer."

21. The house arrest regime that Plaintiff was subjected to, is the most restrictive yet reported. Plaintiff was unable to leave home at all and precluded from obtaining outside employment. All travel from his site of confinement must only be in response to a life- threatening crisis;

even movement for religious expression must be approved by his pretrial services officer as

an "emergency." Although the site of confinement is his uncle's house who is a disabled

veteran, he's was not allowed to perform everyday basic necessities, like grocery shopping,

doctor or dentist appointments, library, visit family members, take out the trash, etc., without

violating the conditions of his bond.

22. The home detention program that Plaintiff was subject to encompass a range of state control,

with various levels of deprivation of liberty, and is tantamount to punishment, although he

was not convicted of any crimes, and is not related to a legitimate government interest, such

as rehabilitation or to prevent recidivism, but was for the purpose of punishment.

23. The severity of restrictions is not necessarily related to a calculated risk assessment of his

propensity to commit a new crime, nor does it reflect the seriousness of the crime for which

he been charged.

24. House arrest involves the restriction of first amendment rights, especially the free exercise of

religion and protected associational guarantees. A regime of house arrest must therefore be

thoughtfully structured. If it is unduly restrictive of the confinee's first amendment rights, it

should be terminated or modified.

25. Plaintiff was functionally isolated and removed from the outside world, as if he were

incarcerated; Plaintiff didn't have anyone to act as his intermediary with the community.

26. Plaintiff assert that he was released on a $5,000 "cash only" bond, which one could infer

would serve the purpose of assuring an individual's presence for all future court dates and

protect the public, because upon the settlement of the case, the $5,000 cash used to post the

bond is returned in full, providing the individual doesn't violate the conditions of the bond,

and even if there's any doubt, of the $5,000 "cash only" bond serving that purpose, of

assuring Plaintiff's appearance at all court dates and protecting the public, modified

conditions with the GPS electronic monitoring device, would serve the same purpose, in

combination with the $5,000 "cash only" bond, because an individual fitted with a GPS

electronic monitoring device, and allowed to work and conduct everyday life necessities, is

still under 24hr surveillance, with exclusion zones, that notify authorities upon being

encroached, therefore serving the same purpose of assuring court appearances and protecting

the public.

27. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully

and wantonly, and caused Plaintiff's injuries.


   CLAIM TWO:  First Amendment-Free Exercise of Religion;

   Supporting facts:

28. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth

herein.

29. Defendants were acting under color of state law in their actions which occurred at all relevant

times to this action.

30. This claim two is being leveled against Defendants Greta Aldridge and unknown employee,

in their individual and official capacities, as employees of the City and County of Denver and

the Denver Pretrial Services Department, for intentionally implementing and enforcing

unconstitutional house arrest practices and policies, that are unduly restrictive, precluding

Plaintiff from practicing his sincerely held religious beliefs, such as his religious diet

practices, visiting religious leaders and spiritual advisors, and/or attending religious services,

in violation of his free exercise of religion rights.

31. Plaintiff has been a Muslim since 1997; as the City and County of Denver is well aware of,

   due to a successful complaint that he filed in 2010, related to being denied a religious diet

   while in the Denver County Jail.

32. Plaintiff practices a diet where he consumes Halal and kosher food related to his sincerely

   held religious beliefs, however, due to the City's restrictive house arrest practices and

   policies, that prevented him from grocery shopping, he was not able to observe his religious

   dietary practices and was forced to eat anything available to eat or starve.

33. Plaintiff was also precluded from visiting religious leaders and spiritual advisors, that he's

   been knowing and visiting throughout the years, that has helped him in his rehabilitation

   process and spiritual growth.

34. A failure to include permission to travel for religious purposes, inevitably curtailed Plaintiff's

   ability to exert his rights under the free exercise clause of the First Amendment.

35. Because abridgment of religious freedoms has not been tolerated in the probation context, all

   instances of house arrest should permit travel for religious purposes without strict pre-

   authorization.

36. In only one reported case has a court upheld a potential violation of a probationer's religious

   freedom.

37. A house arrest regime that requires pre-authorization of religious travel may constitute an

   illegal prior restraint of first amendment rights, particularly in a situation such as Plaintiff's,

   in which he is obligated to request that religious travel be considered an "emergency."

38. The City can advance no compelling reason to justify such restraint, especially when Plaintiff

   can obtain permission for religious travel only through a Court order or an "emergency"

exception. Nor do the legitimate needs of law enforcement, license such restraints on a probationer's constitutional right to exercise religious freedoms.

39. While it is true that those who are incarcerated cannot travel for religious purposes, the greater power to deny the right to travel to the prisoner does not include the lesser power to deny the same right to the house confinee. Moreover, even prisoners have a right to observe their religious faiths; the State's failure to accommodate inmates' religious needs violates the first and fourteenth amendments. Similarly, in the house arrest setting, the State must provide the offender with reasonable access to places of worship. Requiring strict prior authorization for travel to religious services is inconsistent with this constitutionally mandated right.

40. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, and caused Plaintiff's injuries.

CLAIM THREE: Religious Land Use and Institutionalized Persons Act (RLUIPA);

Supporting Facts:

41. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

42. Defendants were acting under color of state law in their actions which occurred at all relevant times to this action.

43. This claim three is being leveled against Defendants Greta Aldridge and unknown employee, in their individual and official capacities, as employees of the City and County of Denver and the Denver Pretrial Services Department, for intentionally implementing and enforcing unconstitutional house arrest practices and policies, that are unduly restrictive, precluding Plaintiff from practicing his sincerely held religious beliefs, such as his religious diet

practices, visiting religious leaders and spiritual advisors, and/or attending religious services, in violation of his rights under the Religious Land Use and Institutionalized Persons Act.

44. Plaintiff has been a Muslim since 1997, as the City and County of Denver is well aware of, due to a successful complaint that he filed in 2010, related to being denied a religious diet while in the Denver County Jail.

45. Plaintiff practices a diet where he consumes Halal and kosher food related to his sincerely held religious beliefs, however, due to the City's restrictive house arrest practices and policies, that prevented him from grocery shopping, he was not able to observe his religious dietary practices and was forced to eat anything available to eat or starve.

46. Plaintiff was also precluded from visiting religious leaders and spiritual advisors, that he's been knowing and visiting throughout the years, that has helped him in his rehabilitation process and spiritual growth.

47. A failure to include permission to travel for religious purposes, inevitably curtailed Plaintiff's ability to exert his rights under the RLUIPA.

48. Because abridgment of religious freedoms has not been tolerated in the probation context, all instances of house arrest should permit travel for religious purposes without strict pre-authorization.

49. In only one reported case has a court upheld a potential violation of a probationer's religious freedom.

50. A house arrest regime that requires pre-authorization of religious travel may constitute an illegal prior restraint of first amendment rights, particularly in a situation such as Plaintiff's, in which he is obligated to request that religious travel be considered an "emergency."

51. The City can advance no compelling reason to justify such restraint, especially when Plaintiff can obtain permission for religious travel only through a Court order or an "emergency" exception. Nor do the legitimate needs of law enforcement, license such restraints on a probationer's constitutional right to exercise religious freedoms.

52. While it is true that those who are incarcerated cannot travel for religious purposes, the greater power to deny the right to travel to the prisoner does not include the lesser power to deny the same right to the house confinee. Moreover, even prisoners have a right to observe their religious faiths; the State's failure to accommodate inmates' religious needs violates the first and fourteenth amendments. Similarly, in the house arrest setting, the State must provide the offender with reasonable access to places of worship. Requiring strict prior authorization for travel to religious services is inconsistent with this constitutionally mandated right.

53. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, and caused Plaintiff's injuries.


FOURTH CLAIM: Fourth Amendment-Unreasonable Search and Seizure;

Supporting Facts:

54. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

55. Defendants were acting under color of state law in their actions which occurred at all relevant times to this action.

56. This claim four is being leveled against Defendants Greta Aldridge and unknown employee, in their individual and official capacities, as employees of the City and County of Denver and

the Denver Pretrial Services Department, for intentionally implementing and enforcing

unconstitutional house arrest practices and policies, that are unduly restrictive, forcing

Plaintiff to be fitted with a GPS electronic monitoring device, to monitor his every

movement, 24hrs a day, 7 days a week, electronically, without his consent, is unreasonable.

57. On 12/16/19, Plaintiff's $5,000 cash bond was posted by his family and he was released to

the Denver Pretrial Services Department where he was fitted with a GPS electronic

monitoring device on his ankle against his wishes and without his consent, to monitor his

movements electronically.

58. Plaintiff is not on probation or parole, nor has he been convicted of the crime in which he

was placed on the 24hr GPS electronic monitoring device.

59. While released on bond, the victim in the criminal case emphasized, that she believed the

conditions Plaintiff was subjected to is harsh, and openly admitted that she wasn't completely

truthful about the allegations, and requested that his conditions be modified, and that the GPS

electronic monitoring device be taken off the Plaintiff, to no avail.

60. Plaintiff requested Defendants to modify his conditions several times through Defendant

Aldridge, asking her to petition the Court, her supervisor, and/or whoever else was involved

in the violation, to request that his conditions be modified, and/or that the GPS electronic

monitoring device be removed from his body, which she refused to do and denied.

61. Plaintiff was subjected to the maximum level of supervision practice and policy, that

confined him to a house, where he wasn't allowed to leave except for emergencies, although

he was fitted with a GPS electronic monitoring device with exclusion zones, for

approximately seven months.

62. This treatment is tantamount to punishment, although Plaintiff was legally innocent and was not convicted of any crimes related to the conditions.

63. Plaintiff assert that those who are convicted of crimes, and placed on probation or parole, are not subject to the strict conditions he was subjected to.

64. Under the circumstances of the Plaintiff's situation, the physical intrusion on his body, without his consent, is unreasonable.

65. In Grady v. North Carolina, the United States Supreme Court unanimously decided that the government conducts a "search" implicating the protection of the Fourth Amendment when it monitors someone's movements electronically without their consent.

66. The City and County of Denver and the Denver Pretrial Services Department's monitoring requirements, which had Plaintiff's movements under 24hr surveillance, without his consent, although he wasn't convicted of any crimes, nor on probation or parole, constitute an unreasonable search under the constitution.

67. As Grady argued, if a minor intrusion of a person's car, United States v. Jones, or house, Florida v. Jardines, constitutes a search, surely regulating what they can do with their body is a search. The court agreed: "in light of these decisions, it follows that a State also conducts a search when it attaches a device to a person's body, without consent, for the purpose of tracking that individual's movements."

68. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, and caused Plaintiff's injuries.


CLAIM FIVE: Eighth Amendment-Excessive Bail;

Supporting Facts:

69. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

70. Defendants were acting under color of state law in their actions which occurred at all relevant times to this action.

71. This claim five is being leveled against Defendants in their individual and official capacities, as employees of the City and County of Denver and the Denver Pretrial Services Department, for intentionally implementing and enforcing unconstitutional excessive bail practices and policies, subjecting Plaintiff to a bail set at a figure higher than the amount reasonably calculated to fulfill i's purpose.

72. On 12/15/19, Plaintiff was brought to the Denver District Court, to be advised of the charges against him and to have his bond set.

73. At the hearing, Plaintiff learned that the unknown Defendant from the Denver Pretrial Services Department, had recommended that his bond be set in the amount of $10,000 "cash only" and be placed on the maximum level of supervision upon his release to pretrial services.

74. The Denver County Court Judge set Plaintiff's bond at $5,000 "cash only" and ordered that upon release he be placed on the maximum level of supervision with pretrial services and issued a protection order restraining him from the victim in the case, as well as his two year old daughter, who's not a victim in the case, nor a witness.

75. The Judge stated during the hearing that she has never seen the type of recommendation that pretrial services made for Plaintiff for a misdemeanor case, but that she would go along with it.

76. On 12/16/19, Plaintiff's family posted his $5,000 "cash only" bond and he was released to the Denver Pretrial Services Department, where he was fitted with a GPS electronic monitoring device on his ankle.

77. Plaintiff was told by the Denver Pretrial Services Department that Defendant Greta Aldridge was his pretrial services supervisor; that he was not any longer allowed to be at his own home forcing him into homelessness; that GPS exclusion zones were put in place excluding him from several locations with respect to the victim in the case; and that he was not allowed to leave his uncle's house for any reason whatsoever, with the exception of medical emergencies, to go to Court, and to appointments with his pretrial services supervisor.

78. Plaintiff assert that the scheduled bond for domestic violence cases, in the City and County of Denver, is $1,500 "cash, surety, or property," that's the reason why the Judge stated that she has never seen such a recommendation before, although she deal with domestic violence cases every day.

79. Plaintiff assert that his $5,000 "cash only" bond, in combination with the maximum level of supervision he was subjected to, where he was fitted with a GPS electronic monitoring device and not allowed to leave his residence under no circumstances, with the exception of medical emergencies, is tantamount to an excessive bail.

80. The purpose of a "cash only" bond is providing that the individual comply with all the conditions of the "cash only" bond, i.e., appearing at all court dates, complying with pretrial services conditions, and not re-offending, etc., the cash used to post the bond is returned to the person who posted the bond, once the case is settled.

81. Plaintiff assert that his bond was excessive. It is also settled that excessive bond, depending on the financial resources of the defendant, is tantamount to no bond at all. That is why

evidence of financial resources of the petitioner must be heard and taken into consideration

before bond is set.

82. The Unknown Defendant from the Denver Pretrial Services Department, nor the court took

into consideration evidence of Plaintiff's financial resources before the bond was set.

83. It should be clear, under the circumstances of this case, that the $5,000 "cash only" bond, in

combination with "less" than the maximum level of pretrial conditions, would've assured

Plaintiff attended all court dates and protected the community, or in the alternative, if

Plaintiff's bail had been set at $1,500 "cash, surety, or property", the scheduled bond for

domestic violence cases, in combination with the maximum level of pretrial conditions,

although the maximum level conditions are unconstitutional, would've served the purpose of

assuring Plaintiff attended all court dates and protected the community. Therefore, the bond

is excessive.

84. Plaintiff assert that he was released on a $5,000 "cash only" bond, which one could infer

would serve the purpose of assuring an individual's presence for all future court dates and

protect the public, because upon the settlement of the case, the $5,000 cash used to post the

bond is returned in full, providing the individual doesn't violate the conditions of the bond,

and even if there's any doubt, of the $5,000 "cash only" bond serving that purpose, of

assuring Plaintiff's appearance at all court dates and protecting the public, modified

conditions with the GPS electronic monitoring device, would've served the same purpose, in

combination with the $5,000 "cash only" bond, because an individual fitted with a GPS

electronic monitoring device, but allowed to work and conduct everyday life necessities, is

still under 24hr surveillance, with exclusion zones, that notify authorities upon being

encroached, therefore serving the same purpose of assuring court appearances and protecting the public.

85. Plaintiff does not have a history of escape, nor do he have any failure to appears.

86. The Colorado Constitution presumes that every person charged with a non-Capital crime shall be entitled to pretrial release on reasonable conditions. This section balances the rights of an accused with the need to administer justice and concern for public safety.

87. To strike that balance, courts are permitted to impose "reasonable conditions" of pretrial release by which a defendant must abide. The courts are tasked to "ensure the appearance of the criminal defendant at subsequent proceedings and to protect the community against unreasonable danger from the criminal defendant." Thus, it is clear that courts are empowered to impose conditions that will motivate the accused to appear in court and protect the public from unreasonable danger.

88. However, the power is not unrestricted, and reasonableness limits judicial discretion. Courts have found that a reasonable condition does not seek to punish an accused person. Courts must pay particular attention to conditions of release that are dependent upon money. In other words, judges must be sensitive to a criminal defendant's ability to pay money to secure their freedom.

89. The Eighth Amendment to the United States Constitution prohibits excessive bail. Excessive bail is forbidden by a panoply of limitations upon state prosecutions imposed by the U.S. Constitution and the requirement that criminal defendants have a right to due process. The U.S. Supreme Court has defined "excessive bail" under the Eighth Amendment as "Bail set at a figure higher than an amount reasonably calculated to fulfill [its] purpose." Stack v. Boyle, 342 U.S. 1, 5, 72 S. Ct. 1, 3 (1951)

90. It is well established that a person cannot be imprisoned solely because he or she is poor.
Such a scheme would violate the Equal Protection Clause of the Fourteenth Amendment.

91. Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully
and wantonly, and caused Plaintiff's injuries.

CLAIM SIX: Fourteenth Amendment-Equal Protection;

Supporting Facts:

92. Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth
herein.

93. Defendants were acting under color of state law in their actions which occurred at all relevant
times to this action.

94. This claim six is being leveled against Defendants in their individual and official capacities,
as employees of the City and County of Denver, for intentionally implementing and
enforcing unconstitutional house arrest practices and policies, that are unduly restrictive, and
has a "disparate impact" on blacks and Latinos.

95. On 12/16/19, Plaintiff's family posted his $5,000 "cash only" bond and he was released to
the Denver Pretrial Services Department, where he was fitted with a GPS monitor on his
ankle.

96. Plaintiff was told by the Denver Pretrial Services Department that Defendant Greta Aldridge
was his pretrial services supervisor; that he was not any longer allowed to be at his own
home forcing him into homelessness; that GPS exclusion zones were put in place excluding
him from several locations with respect to the victim in the case; and that he was not allowed

to leave his uncle's house for any reason whatsoever, with the exception of medical emergencies, to go to Court, and to appointments with his pretrial services supervisor.

97. Plaintiff was on the maximum level of pretrial services supervision for approximately 8 months and had to visit Defendant Aldridge regularly.

98. Everytime that Plaintiff visited Defendant Aldridge, the only people that he seen in the pretrial services Department subjected to the same conditions as himself, maximum conditions, unable to leave their homes under any circumstances, with the exception of medical emergencies, with 24hr GPS electronic monitoring, are black and latin

99. Defendants City and County of Denver, Denver Pretrial Services Department, Defendant Aldridge, and unknown Defendant, intentionally follow an absolute policy (blanket policy) of placing black and Latino men on maximum condition house arrest while awaiting trial, although they have not been convicted of any crimes, without considering the defendant's employment status and history; the defendant's financial condition; the nature and extent of the defendant's family relationships; the defendant's past and present residences; the defendant's character and reputation; the identity of persons who agree to assist the defendant in attending court at the proper time; the nature of the offense with which the defendant is charged, the apparent probability of conviction, and the likely sentence; the defendant's prior criminal record, if any; and whether the defendant was previously released pending trial and appeared as required.

100.    This policy violates the equal protection clause of the Fourteenth Amendment, because this practice operates to subject Blacks and Latinos to maximum conditions on pretrial services at a substantially higher rate than Whites, is not related to rehabilitation, more

focused on punishment prior to conviction, and has a "Disparate Impact" on Black and

Latino clients.

101.    Data from the Denver Department of Safety reveals an inmate population averaging more

than 2,100 people a day, at the Denver County Jail, with black inmates comprising a

disproportionate chunk of people behind bars.

102.    African Americans comprise just 10 percent of Denver's population, according to the

U.S. Census Bureau, but 24 percent of its inmates. White people make up 45 percent

of Denver's jail population, yet they're underrepresented compared to the city's makeup,

which is 81 percent white.

103.    Of the assessed jail population, approximately 40% are in the highest risk

category. The Pretrial Services Investigation Unit completes a bond report on all assessed

defendants which includes a recommendation regarding pretrial supervision. The decision

matrix was updated most recently in 2016 and is part of the current Pretrial Judicial Order.

104.    The Denver Pretrial decision-making framework for felony and misdemeanor charges is

broke down into categories ranging from one to four with category four being the highest

(maximum). As the emphasis on money-based systems declines, the pretrial supervision

population has continued to increase. The pretrial program daily defendant population as of

2017 range from 2,364-2,375. There's 9% that has No Supervision; 11% on Administrative

Supervision; 50% on Enhanced Supervision; 25% on Intensive with Monitoring; and 5% on

Maximum Supervision.

105.    Plaintiff assert that the 5% on maximum supervision such as himself is made up almost

entirely of black defendants opposed to white.

106.    Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, and caused Plaintiff's injuries.

CLAIM SEVEN: <u>Fourteenth Amendment-Due Process of Law;</u>

Supporting Facts:

107.    Plaintiff hereby incorporates by reference all paragraphs of this complaint as if fully set forth herein.

108.    Defendants were acting under color of state law in their actions which occurred at all relevant times to this action.

109.    This claim seven is being leveled against Defendants in their individual and official capacities, as employees of the City and County of Denver, for intentionally implementing and enforcing unconstitutional house arrest practices and policies, that are unduly restrictive, that has a "disparate impact" on blacks and Latinos, in violation of Plaintiff's rights to Freedom of Association, Free Exercise of Religion, and to free from illegal searches and excessive bail.

110.    The due process right, established by the Fourteenth Amendment, guarantees that the government cannot take a person's basic rights to "life, liberty, or property, without due process of law." The due process right is designed to protect citizens from actions taken by state government, counties, towns, and cities.

111.    As argued above, Defendants have deprived Plaintiff of his right to associate with family, friends, religious leaders and spiritual advisors; an opportunity to maintain employment; and to perform everyday basic necessities, like grocery shopping, doctor or dentist appointments,

library, visiting family members, take out the trash, etc., in violation of his due process rights.

112.    Defendants have deprived Plaintiff of his right to practice his sincerely held religious beliefs, in violation of his due process rights.

113.    Defendants fitted Plaintiff with a GPS electronic monitoring device on his ankle against his wishes and without his consent, to monitor his movements electronically, in violation of his due process rights.

114.    Defendants have subjected Plaintiff to a bail set at a figure higher than the amount reasonably calculated to fulfill its purpose, in violation of his due process rights.

115.    Defendants have subjected Plaintiff to unconstitutional house arrest practices and policies, that are unduly restrictive, and has a "disparate impact" on blacks and Latinos, in violation of his due process rights.

116.    Defendants, as described above, were acting recklessly, knowingly, intentionally, willfully and wantonly, and caused Plaintiff's injuries.


E.    REQUEST FOR RELIEF

Plaintiff requests the following relief:


A.) Appropriate declaratory and other injunctive and/or equitable relief as to each Defendant in their individual capacities;

B.) Compensatory and general damages on all claims allowed by law, in an amount to be determined at trial from all defendants named in their individual and official-capacities;

C.) Punitive damages and exemplary damages on all claims allowed by law in an amount to be determined at trial from all defendants named in their individual and official capacities;

D.) A trial by jury;

E.) Pre-and-Post judgment interest at the lawful rate;

F.) Any further relief that this Court deems just, proper and equitable.

## F.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.; and (4) the complaint otherwise complies with the requirements of Rule 11.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

(Plaintiff's Signature)

08-17-19

(Date)

W.T. Handy Jr.
P.O. Box 231531
Denver, CO 80223

_Legal Mail_

United States District Court
901 19th street
Denver CO 80294





1000

80294

U.S. POSTAGE PAID
DENVER, CO
80222
AUG 21 '19
AMOUNT
**$1.75**
R2303S1040T4-10

